**Linda YORK, et al., Plaintiff,**

v.

**COUNTY OF EL DORADO,
et al., Defendants.**

**No. CIV–S–90–0833 GGH.**

United States District Court,
E.D. California.

Oct. 16, 2000.

Paul Wayne Comiskey, Prisoner Rights Union, Sacramento, CA, Richard P Herman, Prisoner Rights Union, Laguna Beach, CA, Paul T Persons, Law Offices of Paul T Persons, Chico, CA, Dan Lewis Stormer, Hadsell and Stormer, Pasadena, CA, Richard Derevan, Snell and Wilmer, Irvine, CA, for plaintiffs.

John Hagar, Law Offices of John Hagar, San Francisco, CA, for El Dorado County.

## ORDER

HOLLOWS, United States Magistrate Judge.

*Introduction and Summary*

Defendants, the County of El Dorado, et al., move the court to terminate the "injunctive" or "prospective" relief agreed to by the parties in this jail conditions case for the primary purpose of avoiding the agreed upon jail population cap applicable to the South Lake Tahoe jail facility. After hearing, the court determined that it did not have jurisdiction to enter such a termination either under the Prison Litigation Reform Act or Fed.R.Civ.P. 60(b).

*Pertinent Procedural History*

This case commenced in 1990, ultimately proceeded as a consent case under 28 U.S.C. § 636(c), and was initially assigned

to the Honorable John F. Moulds. The case was referred to the undersigned for settlement purposes. The case settled at conference, including a limitation on the population of both the Placerville and South Lake Tahoe jail facilities. Because this jail conditions case was a certified class action, it was necessary that the court approve the settlement after a fairness hearing. For purposes of efficiency in consummating the recently agreed upon settlement, the parties requested that the undersigned take over the case, and with the consent of Judge Moulds and by order of the Chief Judge, the case was formally reassigned to the undersigned.

The settlement agreement was reduced to writing, and "ordered" by the undersigned. Stipulation and Order of Settlement etc. signed December 17, 1993. This Stipulation and Order contained no provision for the retention of jurisdiction by the district court for enforcement purposes, and indeed expressly reflected that the case was to be dismissed with prejudice upon approval of the settlement. Stipulation and Order at 8. The undersigned clearly recalls, and the parties do not disagree, that the *sine qua non* for the County's agreement to settle was the dismissal and the fact that the settlement was *not* to be construed as a consent decree. *See id.* at 7–8. There was to be no court monitoring of the implementation of the settlement. The parties were not required to furnish reports to the court. However, the order contemplated further approval proceedings, and these were set in due course. The undersigned approved the settlement after hearing issuing his order on January 18, 1994, which provided in pertinent part:

1. The Order of Settlement etc. shall be consummated in accordance with its terms and provisions.

2. The Clerk of the Court shall enter final judgment of dismissal pursuant to the terms of the Order of Settlement etc.

A separate judgment of dismissal was entered by the Clerk on January 18, 1994. The case was at an end.

*Discussion*

This case is similar, if not identical, in principle to *Taylor v. United States [Arizona]*, 181 F.3d 1017 (9th Cir.1999) (en banc). In *Taylor,* an Arizona prison conditions case, the parties had stipulated to a preliminary "consent decree" (December 22, 1972) and a final order outlining the procedural and substantive rules for prison discipline. The Arizona district court had approved and ordered the preliminary "consent decree" as well as approved the final stipulation, and entered judgment in Taylor's favor. This judgment provided: " '[t]hat all relief sought by plaintiff members of the class heretofore designated to which they are entitled is granted by this Judgment and that the class, collectively and individually, is entitled to no other relief under this action.' " *Id.* at 1020. The court did not retain jurisdiction to enforce the terms of either agreement.

For seemingly inexplicable reasons and many years later, Arizona moved under the PLRA, 18 U.S.C. § 3626, to terminate the December 1972 consent decree as if it had been the final judgment of the court. The Ninth Circuit *en banc* refused to reach the merits of a constitutional separation of powers problem inherent in the PLRA, and determined that the issue of enforcement of the 1972 order was moot.

Arizona's motion under the PLRA to terminate the "consent decree" entered December 22, 1972 is accordingly moot. There is no December 22, 1972 consent decree left to be terminated, for once judgment was entered, the December 22, 1972 interlocutory order (whatever its label) disappeared. It was automatically terminated by the judgment. This means that the district court had no live motion before it.

*Id.* at 1022.

If this were all the Ninth Circuit had done, the *Taylor* case would be of only minor significance to the present case. However, the court went on to discuss a "what if" issue—what if Arizona had

moved to reopen the judgment instead of the 1972 interlocutory order.

Although reluctant to do so, we now turn to that question because the dissent has addressed a different one, and it cannot be correct that the PLRA's "immediate termination" provision may constitutionally be applied to the *Taylor* judgment. The judgment itself leaves no doubt that it left nothing more for the district court to do. Its terms could not be clearer: "[A]ll relief sought by plaintiff members of the class heretofore designated to which they are entitled is granted by this Judgment and [ ] the class, collectively and individually, is entitled *to no other relief under this action.*" Period.

The court did not retain jurisdiction, as it could have done. Nor does the judgment require Arizona to report on compliance, request permission to make changes, or return to court for any purpose, as it also could have done. Unlike cases where a consent decree does put an injunctive scheme in place and the court retains jurisdiction to enforce it, here the judgment explicitly granted all the relief to which Taylor was entitled. That relief does not include continuing jurisdiction. Indeed, so far as the record discloses, the rules were implemented and the credits were restored; the judgment, in short, was executed. The case is over.

*Id.* at 1023.

The court further explained why it declined to recognize any "continuing supervisory jurisdiction" over the settled judgment:

We disagree with the dissent's view that the district court had "continuing supervisory jurisdiction" or that Arizona

availed itself of the court's "continuing supervisory jurisdiction" on several occasions. *See* Dissent at 6563–64 & n. 7. The court did not have continuing supervisory jurisdiction because the October 19, 1973 judgment did not state that it was retaining jurisdiction. *See Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 381–82, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994).

*Id.* at fn. 11

The majority concluded:

However, inasmuch as the dissent would uphold § 3626(b)(2), we are also constrained to say we disagree that it can be constitutionally applied so as to require the district court to reopen and reconsider the *Taylor* judgment (which leaves nothing more for the district judge to do) under standards that were not in existence when the judgment was entered and became final.

*Id.* at 1026.

The above "what if" discussion might be considered dicta, as argued by the concurrence and dissent; however, it is at least "heavy dicta" by a plurality of an *en banc* Ninth Circuit court. The undersigned does not feel free to disregard it. Applying its logic to the instant case, the court finds that the parties are in no different position than were the parties in the Arizona case. That is, a final judgment was entered herein, giving the district court nothing left to do; the case was dismissed *with prejudice;* and the court did not retain jurisdiction to do anything else in the case. The Stipulation and Order of Settlement, much like the December 1972 interlocutory order, disappeared for purposes of further *federal* court involvement.[1]

---

**1.** The fact that this case was dismissed "pursuant to the terms of the Order of Settlement etc.," Order January 18, 1994, does not incorporate the settlement into the judgment. *Mcalpin v. Lexington 76 Auto Truck Stop,* 229 F.3d 491, 502–03 (6th Cir.2000). The provision that the "Order of Settlement etc. shall be consummated in accordance with its terms and provisions" might on its face be read to

include the substantive terms of the settlement into the judgment until one reviews the terms of the settlement which in pertinent part mandated that the case be dismissed with prejudice with no further involvement of the court contemplated. Clearly, the settlement was a private agreement and not a consent decree.

The court has considered whether Rule 60(b) would permit the court to reopen the judgment in this case for the purpose of terminating the settlement under principles enunciated in *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 112 S.Ct. 748, 116 L.Ed.2d 867 (1992), or the PLRA itself. The court does not believe Rule 60(b) can be invoked for several reasons.

First, the case herein proceeded to termination by way of private settlement, not by way of consent decree settlement or adjudication. The court cannot conceive of why the "no-jurisdiction-to-enforce-where-jurisdiction-to-do-so-is-not-retained" holding of *Kokkonen* does not apply to this case, especially in light of the *Taylor* case. *Rufo* involved a bona fide consent decree against a local jail facility establishing indirect population caps among other requirements. There was no assertion that the federal court did not retain jurisdiction, and indeed, the consent decree had been modified over the years. However, in 1989, the district court declined to further modify the consent decree believing that it could not do so unless extraordinary circumstances were shown. The holding of *Rufo*—somewhat mitigating the requirement for consent decree modification in prison/jail injunctive relief situations—is not of paramount importance here. Rather, the procedural context is. *Rufo* did not involve a "private settlement agreement." *Rufo's* consent decree contemplated further district court supervision. *Kokkonen*, on the other hand, involved a settlement where the district court did not retain jurisdiction to enforce its terms, and where the case was dismissed with prejudice. *Kokkonen* held that the district court was without jurisdiction in such a context to enforce the terms of the settlement upon an alleged breach. The situation in the instant case is more akin to *Kokkonen* than to *Rufo*.[2]

*Kokkonen* did contain a comment that Rule 60(b) might be available to reopen a case for purposes of proceeding with the litigation. *Kokkonen*, 511 U.S. at 378, 114 S.Ct. at 1675–76. However, that is not what the County proposes here. It proposes that the court reopen the judgment for the purpose of terminating the settlement, and then closing the case again—this time forever. The *Kokkonen* Rule 60(b) comment is directed to the situation where the parties proceed after reopening as if the settlement never existed; it does not apply to the situation where the parties desire to tinker *in federal court* with the previous settlement.[3] *See Mcalpin v. Lexington 76 Auto Truck Stop*, 229 F.3d 491, 502–503 (6th Cir.2000).

Not only does the above finding that the court is without jurisdiction harmonize *Rufo* and *Kokkonen/Taylor*, it also dovetails with the provisions of the PLRA. Consent decrees and private settlement agreements are defined in the Act. 18 U.S.C. § 3626(g). "[T]he term 'private settlement agreement' means an agreement entered into among the parties that is not subject to judicial enforcement other than the reinstatement of the civil proceeding that the agreement settled." "[T]he term 'consent decree' means any relief entered by the court that is based in whole or in part upon the consent or acquiescence of the parties but does not include private settlements." Private settlement agreements may be enforced in state court. § 3626(c)(2)(B). *See, Austin v. Hopper*, 15 F.Supp.2d 1210, 1218 (M.D.Ala. 1998) (observing that a private prison conditions settlement agreement is not restrained by the requirements of the

---

**2.** The lesson that defendants in federal court class action settlements might want to draw from a review of *Taylor* and *Kokkonen* is that it is not always wise to demand a case be settled without a consent decree, or without a provision that the district court will retain jurisdiction.

**3.** The court is not stating that the settlement is unenforceable, or interminable, but that according to *Kokkonen*, any action regarding the settlement (as opposed to a consent decree) sounds in contract and must be brought in state court.

PLRA; however, any breach of the agreement must be determined in state court).

*Conclusion*

The motion of the County to terminate the provisions of the Order of Settlement etc. is denied for lack of this court's jurisdiction. This order is without prejudice to any state court proceedings the County may wish to initiate concerning the Order of Settlement etc.

IT IS SO ORDERED.